CARROL FARRAR V. STATE

No. 27,231. February 16, 1955
Rehearing Denied March 30, 1955
Certiorari Denied by Supreme Court of the United States
October 10, 1955, Filed October 22, 1955

*John Cutler* and *Woodrow Seals*, Houston, for appellant.

*Dan Walton*, District Attorney, *Eugene Brady*, Assistant District Attorney, Houston, and *Leon Douglas*, State's Attorney, Austin, for the state.

BELCHER, Judge.

Appellant was convicted for the offense of murder with malice, and his punishment was assessed at death.

The state's testimony shows that Officer Tucker and Fritz Engelking, a treasury department employee, drove to George's Food Store between 7 and 8 P.M. and, as their automobile stopped, appellant, who was standing in front of the store, began firing a pistol at them. Officer Tucker returned the fire. Appellant ran back of the store and barricaded himself behind a Buick automobile parked about forty feet from the building and headed in the opposite direction. Appellant, while behind the automobile, fired his pistol toward the building where Tucker and other officers were located.

Other officers, including Officers Moon and Maddox, the deceased, arrived soon thereafter. Officer Tucker shot appellant with a shotgun and he fell to the ground in front of the Buick. Deputy Sheriff Randio approached the Buick and found Officer Maddox on the ground behind the Buick with a bullet wound over the left eye.

Deputy Sheriff Randio further testified that appellant was lying on the ground in front of the Buick with his right hand over a gun on the ground, and that he moved appellant's hand and took the gun which was a .38 Colt Super Automatic, bearing Serial No. 10276.

Officer Moon testified that when he and Officer Maddox arrived at the scene he went to the front of the Buick and appellant appeared, stuck a gun in his face, and said "Oh, yes, now you get it;" that appellant shot him in the right arm. He further testified that he last saw Officer Maddox about eight feet behind the Buick and that appellant was then firing in the direction of Maddox.

Mrs. Verdell Pitts, who was across the street from the store, testified that she could see a man in front of an automobile behind the store firing a gun; that she saw the officer running between the automobile and the store; that the man in front of the automobile fired toward the officer and the officer fell at the rear of the automobile; and that after the shooting she saw the officer that was shot on the ground, and the other man, who resembled appellant, on the ground in front of the automobile.

It was shown that Officer Maddox's death was caused by the gun shot wound in the head.

Witnesses Rymer and Queen, firearms experts of the Texas Department of Public Safety and Houston Police Department, testified that their examination showed that the bullet, which was identified as having been removed from the head of the deceased, had been fired from the gun which was identified as the one removed from underneath the hand of the appellant immediately after the deceased was shot.

Appellant did not testify and offered no evidence in his own behalf.

Appellant contends that the indictment is void because the grand jury which presented it was impaneled on the first day of a new term of Criminal District Court No. 2 of Harris County while a hold-over grand jury from a previous term in Criminal District Court No. 3 of Harris County was, under Art. 338a, Vernon's Ann. C.C.P., continuing in session.

This contention is based upon the assertion that there is no

authority for two grand juries to be in session in the same county at the same time.

The legislature has provided that a grand jury may be convened on the first or any subsequent day of the term of a district court. Art. 344, Vernon's Ann. C.C.P.

Art. 338a, Vernon's Ann. C.C.P., provides that in certain counties the judge of the district court may, within the term, under certain prescribed conditions, extend the period of time for which a grand jury shall sit after the expiration of the term for which it was impaneled for the purpose of concluding the investigation of matters then before it.

We know of no provision in our constitution which would prevent the impaneling of a grand jury in Criminal District Court No. 2 while the grand jury in Criminal District Court No. 3 was sitting under the authority of Art. 338a, Vernon's Ann. C.C.P.

By Bill of Exception No. 1, appellant complains of the overruling of his motion to quash the venire. Such motion alleged that the prospective veniremen saw appellant in the hallway of the court house in chains and handcuffs, thereby prejudicing them against him; and further alleged that one of the veniremen, Fred P. Maddox, Sr., was the father of the deceased and, in all probability, made known his identity to said jurors, which communication would tend to prejudice them against appellant.

The court heard testimony on the motion. It was shown that appellant had on handcuffs and was in chains when brought to the court house, but they were removed before he was taken to the court room.

The court qualified the bill by certifying that each venireman stated, while being examined as a prospective juror, that he had not observed appellant in chains or handcuffs. The court further certified that venireman Fred P. Maddox, Sr., was excused before the court officially opened and there was no evidence that he had communicated his relationship to the deceased to other veniremen.

This bill does not show, nor does the record show, that any member of the jury saw appellant handcuffed and in chains, or that any member knew that the father of the deceased was on the venire, and therefore no error is shown.

By Bill of Exception No. 2, appellant complains that immediately after the verdict was returned and the jurors had been discharged two of the state's attorneys and members of said jury returned to the jury room and closed the door. He also complains of the refusal of the foreman and two other members of the jury to talk to appellant's attorneys because such action deprived them of the right to ascertain the possibility of any jury misconduct.

We know of no statute which this conduct violates and the bill shows no injury to appellant as a result of such action.

Appellant urges error in the opening argument to the jury by the assistant district attorney, when he stated: "Officer Maddox had come out here to arrest the defendant for a breach of the peace." However, appellant's objection thereto was promptly sustained by the court, and the jury was instructed not to consider said statement for any purpose. We are of the opinion that no reversible error is here reflected.

By Bill of Exception No. 5, appellant complains of the taking of a picture of the jury by a newspaper photographer, and, in his brief, further complains of the suggestion by the court that a picture be taken of the jury and informing them that the court was going to have a copy sent to them.

This bill was qualified by the court and filed, to which appellant states in his brief he excepted, and has filed direct into this court an exception to the court's qualification and a purported bystander's bill. The exception not having been called to the trial court's attention, the bill will be considered as qualified. Wall v. State, 156 Texas Cr. R. 239, 240 S.W. 2d 763; Miers v. State, 157 Texas Cr. R. 572, 251 S.W. 2d 404; Bonewald v. State, 157 Texas Cr. R. 521, 251 S.W. 2d 255; Ferguson v. State, 159 Texas Cr. R. 169, 261 S.W. 2d 721; McKelvey v. State, 159 Texas Cr. R. 356, 263 S.W. 2d 774; Alvarez v. State, 159 Texas Cr. R. 384, 264 S.W. 2d 110.

The bill shows that at the time the jury was returned to the jury box during their deliberation, a newspaper reporter requested permission to take a picture of the jury and other pictures; and, no objection being made, a picture of the jury, appellant and attorneys was made; that the court remarked to the photographer that he might make extra copies for the jury and they would probably appreciate having one, to which remark no objection was made.

This opinion is not to be construed as approval of this court of the practice of taking pictures in the court room, but we cannot hold that, in a case such as we have here where there was no objection and no showing of injury to the appellant, reversible error is reflected.

The evidence is sufficient to support the finding of the jury that the appellant voluntarily shot and killed the deceased and, in so doing, was actuated by malice.

Finding no reversible error, the judgment is affirmed.

Opinion approved by the court.

### ON MOTION FOR REHEARING

MORRISON, Presiding Judge.

Appellant's counsel by able brief and argument has urged this court to reconsider the contentions raised on original submission. He takes us to task for not discussing some of the authorities cited by him in support of his contention that two grand juries could not legally sit at the same time in the same county. We observe here at the outset that the indictment against the appellant was returned by the regularly impaneled grand jury in Criminal District Court No. 2 and not by the hold-over grand jury in Criminal District Court No. 3. He is in a much poorer position to raise this question than one who had been indicted by the held-over grand jury.

The principal authority upon which reliance is had is Re Opinion to the Governor, 4 A. 2d 487, 121 A.L.R. 806. In that opinion the Justices of the Supreme Court of Rhode Island answered in the negative the Governor's question, "May the Legislature authorize and empower the Superior Court sitting in any county to impanel a special or additional grand jury to attend said Superior Court to serve for such time as may be required and until discharged by said court, said special or additional grand jury to sit in the same county, whenever necessary, contemporaneously with the regular grand jury, which, in accordance with the existing law, has been impanelled and is then in attendance on said Superior Court?" They gave as their reason for so answering that existence of more than one grand jury in a county at the same time would lessen the protection of a citizen against possible unjust prosecutions. In the opinion, the justices stated that the only case they had found which was

contrary to their holding was State ex rel v. Price, 101 Ohio St. 50, 128 N.E. 173. They stated that they were not bound by the holding in the Price case, among other reasons, because the Price case was a litigated case in which the constitutionality of a specific statute was involved and therefore entitled to the presumption of constitutionality, whereas they were merely answering a request for an advisory opinion in which no such presumption was involved.

The Price case, supra by the Supreme Court of Ohio, upheld the constitutionality of a statute which authorized the impaneling of more than one grand jury in the same county at the same time.

From the annotation found in 121 A.L.R. at page 814, it would appear that the holding in the Price case is supported by the opinion of the Supreme Court of Illinois in People ex rel Ferrill v. Graydon, 164 N.E. 832, and that the same is authority for our holding here.

We are not impressed with appellant's contention that, because Section 13 of Article V of the Texas Constitution provides that a grand jury shall be composed of twelve men, Article 338a is unconstitutional insofar as it authorizes the existence of two grand juries in the same county at the same time.

Appellant asks that we amplify our opinion wherein we discuss the argument of the district attorney when he stated, "Officer Maddox came out here to arrest the defendant for a breach of the peace." He contends that there is no evidence to support the argument. We do not agree and have concluded that the court erred against the state when he sustained the objection to the argument. Officer Tucker testified that he saw neither Officer Maddox or the paddy wagon at the scene when the appellant began the shooting. It therefore could be logically argued, we think, that Maddox came to the scene in order to assist in the arrest of the appellant who was, without provocation, firing at officers of the law, which is certainly an aggravated breach of the peace.

In our original opinion we declined to approve the practice of allowing photographers to take pictures in the courtroom during the course of the trial. The bill as qualified, however, reflects that the photographer requested permission of the court to take a picture of the entire courtroom scene, and no objection

was interposed. If the appellant thought that he might be injured by such an incident, he should have spoken then.

We were chided for not discussing People v. Munday, 117 N.E. 286, in our opinion. An examination of that opinion will disclose that the case was reversed primarily on jury argument. The admonition about the taking of photographs in the courtroom was for the guidance of the trial court upon another trial and is not authority for a reversal of this case. Stroble v. California, 343 U.S. 181, 96 L. Ed. 872, cited by appellant, does not touch the question here before us.

We are at a loss to see how the comment of the court to the effect that the jury would probably like to have copies of the picture could have prejudiced his cause. We have concluded that the unwarranted killing of a policeman in the line of duty, rather than the fact that the jury had their picture taken, brought about the verdict herein.

Appellant's counsel are to be commended for their scholarly brief.

Remaining convinced that we properly disposed of this cause originally, appellant's motion for rehearing is overruled.