Tom Victor MARTIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 39208.

Court of Criminal Appeals of Texas.

Feb. 23, 1966.

Rehearing Denied April 20, 1966.

J. E. Jackson, Fred Whitaker, Carthage, for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is for rape; the punishment, twenty years.

This case was reversed on a former appeal. Martin v. State, Tex.Cr.App., 385 S.W.2d 260.

The prosecutrix, age 15, on the day charged in the indictment, testified that the appellant, her father, had played with her breasts and private parts, and told her that all girls after age thirteen did that with their father; that he also told her that if she did not believe it to read Genesis 19:30–38, and she identified her father's Bible and the place it was marked in Genesis; that while she and her father were alone at home on April 30, 1963, he, for the first time placed his private parts into her private parts, and again had intercourse with her in October, 1963; that she had never been married, and had never had intercourse with any man except her father, and that appellant was the father of her baby born January 21, 1964.

The appellant made and signed a written statement, which, omitting the formal parts, reads in part as follows:

"My name is Tom Victor Martin and I am 49 years of age. * * * Sometimes around the last of April, 1963, I was at home with my daughter Vickey Martin, I had been drinking pretty heavy, and I started playing with her private parts, then I took my private part out and I put it in her private part. * * * The last time I had anything to do with her like that was several days before I went to Canada which was about the 12th of October, 1963. I was drinking then. I am very sorry for what I have done."

The appellant testified that while he was working in Canada in November, 1963, he received a telephone call from his wife, telling him that his daughter Vickie was preg-

nant; that he then talked to Vickie and asked her if she had lost her mind, and that he told her to get things straightened out; that he returned to Shreveport, which is about thirty miles from his home, in a company truck; that he did not commit the act charged but related facts and circumstances which revealed that his daughter could have been keeping company with a married man; and he offered witnesses whose testimony revealed opportunities for such association with another man. Appellant admitted that his signature appeared on the written statement, but that its contents relating to the prosecutrix were not true, and he signed the statement because he thought the district attorney could and would help him.

After a hearing was held in the absence of the jury on the voluntary nature of appellant's written statement, the trial court made an independent finding that said statement was voluntarily made.

■ It is contended that the court erred in admitting evidence of extraneous crimes.

Both prior and subsequent acts of fondling and intercourse may be introduced in a statutory rape case. Lozano v. State, 159 Tex.Cr.R. 613, 266 S.W.2d 147; Bates v. State, 165 Tex.Cr.R. 140, 305 S.W.2d 366; Smith v. State, 170 Tex.Cr.R. 518, 342 S.W.2d 445.

■ Error is urged because the jury discussed during their deliberation that appellant had been given a lie detector test and had probably failed it.

On the hearing on the motion for new trial no juror testified that the appellant was in fact given a lie detector test, and when it was mentioned some jurors stated that there was no evidence of a test and that they did not know. In the absence of any proof of a test or that such a test was considered, no error is presented.

■ Appellant contends that the jury committed reversible error in reading and considering that portion of the Bible which

the prosecutrix testified that appellant told her was authority for her acts with him and referred her to those parts he had marked in Genesis 19:30–38. The Bible with the verses marked was identified by the prosecutrix, but neither the verses nor the Bible were offered in evidence. No motion was made to instruct the jury not to consider them. Even though the verses were read from another Bible in the jury room, this matter in light of the record does not call for a reversal.

■ Reversal is urged on the ground that the jury discussed and considered the parole law. The jury did discuss the parole law and that a prisoner would usually become eligible for parole. No juror knew the provisions of the parole law and no one undertook to state them. No assertions of fact were made except there was a parole law which would under a good record by the appellant be applicable to him. No error is presented. Torres v. State, 169 Tex.Cr.R. 113, 331 S.W.2d 929.

■ Complaint is made to the admission of the testimony of Dr. Smith that he delivered the baby of the prosecutrix which was born January 21, 1964, over appellant's objection that it was repetition, inflammatory, and prejudicial. Dr. Smith also testified that if the infant was conceived in April, 1963, it would be a full term or near term baby. He further testified that the baby he delivered was normal "and was at or near term" baby. This offense is alleged to have been committed in April, 1963. The admission of the testimony was not error.

■ It is contended that reversible error was committed when the jury, during its deliberation, discussed and considered the punishment of life assessed the appellant on a former trial, and in considering the punishment assessed another man on a plea of guilty for rape on his minor daughter in Panola County in spring of 1964, and also considered the penalty given another man tried for the same offense in Panola County in spring of 1964. The punishment

assessed the other two men for similar offenses is not shown.

The appellant called four jurors and the state called three. No reasons appear for the failure of either side to call the other five.

The testimony does not reveal that any juror or jurors considered or determined the punishment assessed the appellant in this case in the light of his former punishment or that of the other two men convicted in Panola County.

■ In the amended motion for new trial, reversal is sought on the grounds that appellant's request for counsel was denied, that he was not advised of his right to counsel or his right to remain silent, or his right to an examining trial.

The record reveals that the appellant, age 49, went to Canada in October, 1963, where he was employed in an oil field; that on November 22, 1963, his wife by telephone told him that the prosecutrix was pregnant, that he was the cause, and she also told him that, "You better not come home"; that about December 5 or 6, 1963, he left Canada in his employer's truck and arrived in Shreveport about 7 or 8 p. m., December 7, where his employer had an office; that he registered at a hotel under an assumed name. The next morning appellant telephoned his wife at his home in DeBerry, Texas, which is thirty miles from Shreveport but no one answered. Next, he called a friend in Shreveport, and then by telephone talked with his sister who lived near his home.

After one day in Shreveport, appellant telephoned Sheriff Spradley in Carthage about 3 p. m., and asked if he had a warrant for him and told Spradley where he was. The appellant testified that he voluntarily signed a waiver of extradition in Shreveport, and in custody of Deputy Sheriffs Poss and Henigan they arrived at the jail in Carthage about 6:30 p. m., December 9, 1963. The next morning about 9 a. m., the appellant was taken to the office of the district attorney where they talked about fifteen minutes and he was returned to jail. The appellant having agreed to take a lie detector test was taken to Dallas where he remained over night and was returned to Carthage the next day, arriving about 3 p. m. The appellant was taken to the office of the Justice of the Peace, W. D. Bush, about 4 p. m., where in the presence of Bush and Deputy Sheriff Poss, the district attorney gave the appellant the statutory warning pertaining to any written statement that he made; and Justice Bush identified a written statement which he testified was read to the appellant who then signed it in his presence, after he had told him he did not have to sign it.

The appellant testified that while in custody he asked to talk with an attorney but the officer refused to call or allow him to call an attorney, and he was not at any time advised of his right to counsel. On examination by the state the appellant admitted that he never asked or was refused the use of a telephone.

The testimony of the state reveals that the appellant never requested at any time to see an attorney and there is no evidence that an attorney was denied the right to see him; and he was never denied the use of the telephone.

From the time the appellant left Canada about December 5 or 6, and during the time he telephoned his friend and his sister while in Shreveport, and before telephoning Sheriff Spradley telling him where he was and then signing a waiver of extradition, he was aware of what he would be facing in Carthage and was free to seek any aid or advice he wanted before going to Carthage in custody of the sheriff whom he had voluntarily telephoned.

■ The issue of the voluntary nature of the written statement was properly submitted to the jury.

The other contentions presented have been considered and they do not reveal error.

Finding the evidence sufficient to support the conviction and no error appearing, the judgment is affirmed.

Opinion approved by the Court.