Shaper TAYLOR, Appellant,

v.

The STATE of Texas, Appellee.

No. 40546.

Court of Criminal Appeals of Texas.

Oct. 11, 1967.

Rehearing Denied Nov. 29, 1967.

J. M. Fly, Victoria, L. S. Benge, Goliad, for appellant.

Wiley Cheatham, Dist. Atty., Quero, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is Murder with Malice; the punishment, assessed by the jury, 99 years in the Texas Department of Corrections.

Appellant does not challenge the sufficiency of the evidence, and we do not deem necessary a complete recitation of the facts reflected by this 3,800 page record. The following summary will suffice.

Appellant, a 65 year-old bachelor rancher, was charged with the murder of Lucia Cabrerra Davila Etter, age 38. The record shows that appellant's father on his death bed had extracted a promise from appellant that he would never marry and would always care for his older sisters. It appears that over a period of 15 years appellant had engaged in sexual relations with the deceased, who at the time of her death had been married to Fritz Etter, age 70, for approximately a year and a half. On November 16, 1965, at approximately 2:40 p. m. appellant followed Lucia, the deceased, and Fritz in his automobile and after overtaking their pickup truck within the city of Goliad, shot and killed both of them with his rifle. There were eye witnesses. Appellant testified that he had always paid the deceased for her favors, but sometime before the alleged offense, and particularly since her marriage to Etter, the deceased had begun to extort money from him upon the threat to reveal their long time illicit affair to his old maid sisters with whom he lived. He related that on the day in question the deceased had demanded more money, rejecting his offer of $45.00 out of the $50.00 he had as not being enough, and had motioned for him to follow. Appellant testified he concluded that the deceased and her husband were on the way to the ranch to see his sisters; that when they stopped, the deceased jumped out of the pickup and that Fritz was reaching under the seat of the pickup as if for a gun. Appellant then claimed that he remembered nothing that transpired afterwards until he was on his way home, whereupon he returned voluntarily to the Sheriff's office. Appellant's defenses were insanity and self-defense.

Appellant initially contends the evidence was insufficient to support the jury's verdict finding the appellant sane at the pretrial hearing afforded appellant by virtue of Article 46.02, Sec. 1, Vernon's Ann. C.C.P.

■ Appellant apparently overlooks the fact that no appeal lies from a judgment rendered in a preliminary trial on the issue of insanity. Pena v. State, 167 Tex.Cr.R. 406, 320 S.W.2d 355; Ex parte Hodges, 166 Tex.Cr.R. 433, 314 S.W.2d 581. See also State v. Olsen, Tex., 360 S.W.2d 398.

■ Nevertheless, we observe that, in addition to the presumption of sanity, the State's evidence including medical testimony clearly supports the jury verdict. It is further noted that the same two is-

sues, present insanity and insanity at the time of the commission of the offense, were also presented to and rejected by the jury at the trial on the merits.

In view of some discrepancy in numbers and in order to discuss the grounds of error urged in a more chronological order, we have taken the liberty of re-numbering the remaining grounds of errors.

If we understand appellant's second ground of error, it is that there existed so great a prejudice in the county that he could not obtain a fair and impartial trial, and the trial court erred in refusing to change venue upon appellant's motion.

At the hearing upon the written motion for a change of venue, appellant called nine witnesses, eight of whom testified they had heard the case generally discussed and expressed their opinion that appellant could not receive a fair trial in Goliad County. The State called ten witnesses who related that the case had only been slightly discussed and that in their opinion appellant could receive a fair and impartial trial. The record reflects that Goliad County had a population in excess of 5,000 persons according to the 1960 Federal Census, and approximately 2,000 qualified voters at the time of the hearing. The court overruled such motion. Inspection of the voir dire examination indicates that approximately 39 of the 112 jurors questioned held the opinion that appellant was guilty. However, all of the twelve jurors ultimately selected had formulated no opinion as to guilt or innocence, though most had either heard the case discussed or read about the case in the newspapers. It is noted that appellant's counsel expressly stated that he was happy to accept at least 9 of the 12 jurors chosen.

Appellant attached to the record at hearing on Motion for New Trial a number of copies of the Victoria *Advocate* and clippings from the Corpus Christi *Caller-Times*. Most of the articles dealt with news reports of the trial on the merits

after the selection of the jury. There is a showing that the Victoria *Advocate* had a circulation of 500 copies in Goliad County at the time, but the circulation figures in the county of other newspapers were not offered. The news accounts attached appear to be fair, non-inflammatory, and apparently published for the purpose of informing the public of current events. There is no showing that by reason of such publication there was created in the public mind a prejudice so great as to prevent appellant from receiving a fair trial.

Appellant does point to the affidavit of Dr. George Constant, appellant's expert witness at the separate sanity trial, that his life was threatened by an unknown person if he testified again. Appellant further contends that the fact the jury returned with the verdict of guilty after deliberating only an hour and twenty minutes is evidence of the jury's preconceived notion of appellant's guilt. No authority is cited in support of such proposition.

In Moon v. State, 169 Tex.Cr.R. 14, 331 S.W.2d 312, where the death penalty was imposed in a murder case, this Court held that in order to require a reversal for refusal to change venue there must be a showing that prejudice against the accused found its way into the jury box at his trial. See also Lopez v. State, 158 Tex. Cr.R. 16, 252 S.W.2d 701; Kizzee v. State, 166 Tex.Cr.R. 191, 312 S.W.2d 661; Slater v. State, 166 Tex.Cr.R. 606, 317 S.W.2d 203. After a careful examination of the facts and circumstances and procedures employed, it is our considered judgment that there has been no showing of identifiable prejudice, or that the appellant was denied a fair trial or due process of law. The trial judge did not abuse his discretion in refusing to change venue.

In his third ground of error appellant contends "that the trial court erred in ordering the Sheriff's department to summon talesmen after exhausting the list of the first one hundred jurors and forc-

ing the defense to attempt to select a jury from persons handpicked by the Sheriff's department, when all during this time the Court had on file with the District Clerk's office a list of jurors selected by the jury commission to be used during this term of Court."

The record indicates that the jury was selected in part from the jury panel for the week rather than by a special venire as permitted by Article 34.01, V.A.C.C.P. When it appeared to the court that such jury panel was soon to be exhausted, the court properly ordered the Sheriff to summon a group of talesmen in accordance with Article 34.02(b), V.A.C.C.P., Goliad County being a jury commission county. Appellant subsequently objected to these talesmen as being "handpicked" by the Sheriff, composed chiefly of persons of Dutch or German extraction, and not selected from all parts of the county. The objection was overruled. Later, when it again appeared that the panel would be exhausted, the court ordered the Sheriff to summon 15 additional talesmen. At such time the court noted that there was an unused jury list selected by the jury commissioners for the term, and stated if appellant agreed, the second group of talesmen might be summoned from such list. In view of such list appellant then objected to all talesmen summoned, asking that they be dismissed. Upon being overruled, appellant's counsel then agreed to the use of such jury list by the Sheriff for summoning the second group of talesmen. It appears that subsequently a third group of talesmen was summoned by the Sheriff. We perceive no error.

■ In capital cases, upon the exhaustion of a special venire or the jury panel for the week (where as many as one hundered have been summoned) in counties not using the jury wheel, the additional veniremen or talesmen are to be summoned by the Sheriff upon the order of the court. Articles 34.01, 34.02, V.A.C.C.P. The court was not required to resort to jury lists selected by jury commissioners for the term of court. Further, it is not necessary that talesmen be summoned from every section of the county; Gonzalez v. State, 164 Tex. Cr.R. 64, 297 S.W.2d 144; Adams v. State, 158 Tex.Cr.R. 306, 255 S.W.2d 513.

Appellant contends in his fourth ground of error that the trial court erred in refusing to give him five additional challenges after he exhausted his fifteen peremptory challenges.

If we understand appellant's contention, it is that he was required to use five of his peremptory challenges when the judge refused his challenges for cause where the prospective jurors had stated they had an opinion as to appellant's guilt or innocence and that it would require evidence to remove such opinion.

This Court has, in order to give to this appeal every consideration, searched the 1,549 pages of the voir dire examination to determine which fifteen prospective jurors appellant challenged peremptorily and from this group the five of which appellant now complains.

■ We cannot find any testimony by these prospective jurors which would indicate the trial court erred in refusing any challenge for cause, where made, on the ground that the prospective jurors entertained an opinion which would influence his verdict.

Appellant's contention is without merit and is overruled.

In his fifth ground of error appellant complains that the trial court erred in admitting, over repeated objections, testimony that he had also killed Fritz Etter.

■ It is well settled that "(w)here the offense is one continuous transaction, or another offense is a part of the case on trial or blended or closely interwoven therewith, proof of all the facts is proper." 4 Branch's Anno. P.C.2d, Sec. 2255, p. 618. See also 23 Tex.Jur.2d, Sec. 196, p. 302;

Cook v. State, Tex.Cr.App., 398 S.W.2d 284; Fuller v. State, Tex.Cr.App., 380 S.W.2d 619. The trial judge did not err in admitting this testimony. We observe that throughout the trial the careful trial judge sought to give the above rule as limited an application as possible, even to the extent of entirely excluding one State's witness. Appellant's fifth ground of error is overruled.

■ Appellant further contends in his sixth ground of error that the trial court committed reversible error in permitting, over objection, the Sheriff of Goliad County to testify as to oral inculpatory statements made by appellant at the time of his voluntary surrender at the Sheriff's office.

The shooting occurred at 2:50 p. m., and shortly thereafter the Sheriff arrived at the scene. After a few minutes of investigation the Sheriff left to find appellant. Meanwhile appellant had voluntarily arrived at the Sheriff's courthouse office, but found no one present. Having heard over the Sheriff's two-way radio that the Sheriff was on his way to appellant's residence, and not being able to operate the same, appellant walked to the Tax Collector's office and asked a woman deputy there to contact the Sheriff and tell him that he (appellant) was not running. Appellant then returned alone to the Sheriff's office, sat down and began reading a newspaper. When the Sheriff arrived, between 3:15 p. m. and 3:30 p. m., the appellant arose and voluntarily stated, "Well, I told them I was going to do it." The Sheriff then pointed to the .30–30 rifle (later shown to be the weapon from which the fatal shots were fired) and appellant stated it belonged to him, but warned the Sheriff to be careful as the rifle was loaded. The record reflects that the Sheriff then told appellant he should not make any further statements as there were certain procedures to be followed before he could say anything. Shortly thereafter the appellant was taken before a magistrate.

The Sheriff testified he had not arrested appellant prior to the complained of statements. From all the facts and circumstances in evidence, including the fact appellant was still in possession of his loaded rifle, we conclude that appellant was not under arrest when he made the inculpatory remarks described. The trial court did not err in admitting such statements.

Appellant relies upon Holland v. State, Tex.Cr.App., 415 S.W.2d 186, in support of his contention. Holland is clearly distinguishable on its facts from the case at bar.

■ We further note that Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, is not applicable to the case at bar because appellant's trial commenced prior to June 13, 1966, the date of the decision in Miranda. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.

Even if appellant's trial had commenced after the effective date of the Miranda decision, we note that in Miranda the United States Supreme Court held:

"There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

■ In his seventh ground of error appellant contends that reversible error was committed when the State, over objection, was permitted to read into evidence statements from Dr. George Constant's deposition relating to prejudicial extraneous offenses and transactions committed by the appellant.

It appears that it was the appellant who, without objection, introduced such evidence from the deposition, not the State. The appellant read into evidence Dr. Constant's testimony from the separate sanity hearing as well as a large portion of his deposition,

both on direct and cross-examination. Such testimony included the extraneous transactions now complained of.

It is true that the State subsequently offered the remainder of Dr. Constant's deposition which also mentioned some of such extraneous matters. This was clearly permissible. See Article 38.24, V.A.C.C.P. Appellant's seventh ground of error is overruled.

■ In appellant's eighth ground of error he urges that the courtroom decorum was such that he was deprived of a fair and impartial trial accorded by the Fourteenth Amendment, United States Constitution. He contends that armed sheriff's deputies were located throughout the courtroom and seated near the jury box and appellant's counsel table; that coffee was provided to the jury by the Sheriff's office; that the courtroom was filled to capacity and a local class of school children attended one court session (apparently at hearing on Motion to Change Venue only); that the press was provided a table inside the bar or rail in view of the jury box; and that on numerous occasions the Sheriff and State's counsel conferred in open court in presence of the jury.

■ There can be no question that "atmosphere essential to the preservation of a fair trial—the most fundamental of all freedoms—must be maintained at all costs." Estes v. State of Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543.

■ We recognize that despite the observance of the formal requisites of a trial that the atmosphere in and around the courtroom might be so hostile as to interfere with the trial process. Estes v. State of Texas, supra; Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543.

With this in mind we will examine appellant's contention.

During the trial appellant made two objections in this connection. First, he objected to a deputy sheriff sitting close to appellant's counsel table. Such objection was sustained and the deputy was instructed by the court to move. Second, appellant objected to the State's counsel conferring with the Sheriff in presence of the jury. The objection was overruled. There is no showing that the conference or conferences were within the hearing of the jury. It is further noted that when the Rule was invoked as to the witnesses, the Sheriff was excused therefrom by the court, without objection, to assist the court in the conduct of its business.

It is obvious from the record that the trial judge was aware from the outset that there would be a large crowd in the courtroom at all times. He requested the Sheriff to assign such men as necessary to maintain security and insure an orderly trial. Though there is some conflict in the testimony, it appears also that one of appellant's counsel cautioned the Sheriff to take precautions as he felt the appellant (at liberty on two $25,000.00 bonds) might come to the courthouse armed during the trial. This followed information received by the Sheriff that appellant had purchased .45 caliber ammunition.

The trial judge repeatedly cautioned the courtroom audience out of the jury's presence as to their proper conduct to insure no disruption or disturbance. None is reflected in the record.

It is interesting to note that in careful compliance with Article 36.24, V.A.C.C.P., and the decision in Turner v. State of Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424, "special" deputies who were not witnesses to the cases and had not participated in the investigation, were sworn in to act as jury bailiffs for the trial to attend to the wants of the jury. It was these special bailiffs, not the Sheriff, who made

arrangements with the County Judge in order to provide coffee for the jurors.

It is true that in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600, that the Supreme Court clearly indicated that news reporters should not be placed inside the bar. Here, we observe, that only two reporters attended the trial, and one was not present at all sessions. There is no showing that they handled exhibits, caused confusion or disrupted the trial, or took any action that would have dictated that the trial judge regulate their conduct in the courtroom.

We fail to see, from a totality of circumstances, how the procedures employed in the case at bar involved prejudice or even such a probability of prejudice that they can be deemed inherently lacking in due process.

■ Appellant urges in his ninth ground of error that the jury was guilty of misconduct and committed reversible error when, in disregard of the court's specific charge thereon, they considered the aspect of parole in their deliberations on appellant's punishment.

The record reflects that the jury, while in deliberation at the penalty stage of the proceedings, sent the following note to the trial judge:

"Judge: What is the difference in a life sentence and a 99 year sentence. Subject to parole.
Elmer C. Jacob"

The trial judge, with approval of appellant's counsel, answered as follows:

"The Court can only refer you to the instructions in charge.
Joe E. Kelly
Judge, 24th District Court"

It is a matter of common knowledge that from time to time inmates of the Texas De-partment of Corrections are released on parole, Torres v. State, 169 Tex.Cr.R. 113, 331 S.W.2d 929; Walker v. State, Tex.Cr.App., 201 S.W.2d 823, and it is not every mention of parole which calls for a reversal. Henderson v. State, 169 Tex.Cr.R. 206, 332 S.W.2d 705; De La Rosa v. State, 167 Tex.Cr. R. 28, 317 S.W.2d 544. There is no showing that any further discussion followed receipt of the judge's answer, or that at any time during deliberations any juror made an incorrect statement of the law concerning parole which would justify reversal. In fact, the contrary appears. No error is presented. Jackson v. State, Tex.Cr.App., 403 S.W.2d 145; Martin v. State, Tex.Cr. App., 400 S.W.2d 919; Walton v. State, Tex.Cr.App., 398 S.W.2d 555; Mullins v. State, Tex.Cr.App., 397 S.W.2d 426; Henderson v. State, supra; Torres v. State, supra.

■ In his tenth ground of error appellant complains that the jurors following their discharge refused to give appellant's counsel affidavits concerning their deliberations. The refusal of any or all of the members of the jury, after their discharge, to talk to appellant's attorneys or investigators violates no statute and does not authorize a reversal. See Graves v. State, Tex.Cr.App., 382 S.W.2d 486; Farrar v. State, 162 Tex.Cr.R. 136, 277 S.W.2d 114, Cert. denied, 350 U.S. 854, 76 S.Ct. 97, 100 L.Ed. 759.

Appellant lastly complains that the trial court erred in refusing to declare appellant a pauper for the purposes of appeal following a hearing in response to his pauper's oath. He asks this Court to reverse this ruling and order that all costs of the transcription of the court reporter's notes be paid by the county of Goliad.

Under former Article 759a, Sec. 5, C.C.P., an appellant's right to a statement of facts, upon proper presentation of a pauper's affidavit was absolute and no discretion

was vested in the trial court to refuse the same. Zamora v. State, 165 Tex.Cr.R. 613, 309 S.W.2d 447. The former law did not permit the trial court to hear evidence on the question.

Under Article 40.09, Sec. 5, V.A.C.C.P., 1965, the appellant has the responsibility of securing and paying for a transcription of the court reporter's notes and furnishing the same to the clerk in time for inclusion in the record. The 1965 Code gives the trial judge the authority to conduct a hearing to determine indigency when a pauper's affidavit is filed to obtain such transcription without charge. Such procedure was followed in the case at bar.

We have reviewed the record of the hearing, including testimony of appellant's various financial transactions, the sale of cattle following the alleged offense, the transfer of his one-third interest in the ranch to his sisters the day following the trial, and the subsequent sale of such ranch to appellant's attorneys. We cannot agree that the trial court abused its discretion in refusing to order the county to pay for the record.

It is observed that this is not a case where the appellant is before us without a transcription of the court reporter's notes by virtue of the trial court's ruling. Appellant's counsel had the benefit of such transcription in preparing his appeal, both in the trial court and here. One of appellant's retained counsel at the trial and on appeal deposited $400.00 with the reporter and informed the reporter that he or appellant would be responsible for the balance ($3,-215.00). The record does not reveal whether such balance has been paid.

We are not called upon in this appeal to interpret the contractual obligations here involved. Compare Burt v. Gahan, 351 Mass. 340, 220 N.E.2d 817.

The judgment is affirmed.