sweeney 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-93-00373-CR







Porsha Sweeney, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0922296, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING







 A jury convicted appellant Porsha Sweeney of capital murder committed during the
course of a robbery. Act of April 23, 1985, 69th Leg., R.S., ch. 44, § 1, 1985 Tex. Gen. Laws
434, 434 (Tex. Penal Code Ann. § 19.03(a)(2), since amended). Because the State elected not
to seek the death penalty, the district court sentenced appellant to life in prison. Tex. Penal Code
Ann. § 12.31(a) (West 1994). (1) Appellant challenges his conviction by four points of error. We
will affirm the conviction.



BACKGROUND


 At approximately 3:30 a.m. on March 20, 1992, Pete Selvera was murdered during
an attempted robbery in the parking lot of a South Austin nightclub. Witnesses at the scene gave
police a description of the assailants and their vehicle, including its license plate number. Police
traced the car to Houston, and Sergeants Jesse Vasquez and John Hunt of the Austin Police
Department went to Houston to investigate. The officers located the car and discovered that
appellant was the owner. 

 Appellant, his mother, and Tinesha Lee, his girlfriend, agreed to accompany the
officers to the police station for questioning concerning who had the car on the night of the
murder. Appellant was not a suspect at that time, and he and Lee were allowed to return home
after he gave a witness statement. (2) Before leaving the station, appellant agreed to return to the
police station the next day for more questioning and to take a polygraph test. On March 25,
appellant took the polygraph test, and was informed that he failed it. Appellant was not in custody
at this point, but he remained at the police station. After the police questioned other individuals,
appellant and Lee were arrested without warrants for the murder of Selvera at approximately 10
p.m. that evening. Both subsequently gave the police statements after being advised of their
rights, but before arrest warrants were issued. 

 After a jury trial in which both appellant and Lee were tried as co-defendants, (3)
appellant was convicted of the capital murder of Selvera, and the trial court assessed punishment
at life imprisonment. By four points of error, appellant challenges his conviction.



DISCUSSION 


 In his first point of error, appellant argues that the trial court fundamentally erred
by refusing to remove spectators from the courtroom who were wearing buttons designed to
influence the jury to convict. Before the trial began, co-defendant Lee's attorney (4) indicated that
some spectators sitting near the jury box were wearing buttons depicting either the victim's
photograph or supporting Persons Against Violent Crime, an organization that lobbies for stricter
law enforcement. Lee's attorney asserted that the buttons were prejudicial and conveyed a
message to the jury to convict.

 After the bailiff indicated that the buttons of spectators sitting on the first two rows
could be seen from the jury box, the trial court asked the spectators either to remove the buttons
or to move to seats farther back in the courtroom. The court, however, refused to remove the
spectators from the courtroom or to order them to remove the buttons. After the objection was
raised, the court noted that the spectators were being moved farther back from the jury box. The
record indicates that all of the buttons were removed by the noon recess that first day.

 Appellant contends that his right to an impartial jury was denied as a result of the
judge's refusal to order the removal of all buttons from the courtroom immediately. See Tex.
Const. art. I, § 10; Shaver v. State, 280 S.W.2d 740, 742 (Tex. Crim. App. 1955). Appellant
argues that a trial court has a statutory duty under Article 2.03 of the Code of Criminal Procedure
to ensure that a defendant receives a fair trial before an impartial jury. Tex. Code Crim. Proc.
Ann. art. 2.03(b) (West 1977).

 Whenever a courtroom arrangement is challenged by the defendant, we must
examine whether "an unacceptable risk is presented of impermissible factors coming into play." 
Holbrook v. Flynn, 475 U.S. 560, 570 (1986) (quoting Estelle v. Williams, 425 U.S. 501, 505
(1976)). An "atmosphere essential to the preservation of a fair trial--the most fundamental of all
freedoms--must be maintained at all costs." Estes v. Texas, 381 U.S. 532, 540 (1965). 
Undoubtedly, the atmosphere in a courtroom may be so hostile as to interfere with the defendant's
right to a fair trial before an impartial jury. See Taylor v. State, 420 S.W.2d 601, 607 (Tex.
Crim. App. 1967), overruled on other grounds, Jackson v. State, 548 S.W.2d 685, 690 (Tex.
Crim. App. 1977).

 Appellant cites Williams v. State, 170 S.W.2d 482 (Tex. Crim. App. 1943), to
support his contention that the courtroom atmosphere denied him a fair trial. In holding that the
defendant's right to an impartial jury had been denied, the Court of Criminal Appeals noted in
Williams that spectators had crowded the courtroom, fifteen police officers were stationed in the
court, and that in a room near the judge's stand, a shotgun, rifles, machine guns, and some tear
gas bombs were present. The court noted that "if public sentiment was such as to necessitate [the
officers' conduct], it is difficult to believe that . . . the accused could obtain [a] fair and impartial
trial." Id. at 489. In contrast, the spectators in the instant cause were not engaging in disruptive
behavior, attempting to address the jury, or commenting about the defendant or the evidence. See
Millican v. State, 140 S.W. 1136, 1138-39, 1140 (Tex. Crim. App. 1911) (no error found where
the courtroom was packed with spectators who loudly expressed their support for the prosecution
and made "facial demonstrations" after the court ordered them to be quiet).

 In cases involving due process deprivations, courts usually require a showing of
actual prejudice to the defendant. Estes, 381 U.S. at 542. Appellant has presented no record
evidence that the presence of the buttons was noticed by a single juror or that they influenced a
single juror in any way. Indeed, the evidence indicates that after the spectators were removed
from the first two rows, the messages on the buttons were not distinguishable, and that all the
buttons were removed before the noon recess. Appellant cannot show actual harm here, nor can
he show that the buttons "involve[d] such a probability that prejudice [would] result that [the trial]
is deemed inherently lacking in due process." Id.; see Stewart v. State, 856 S.W.2d 567, 569
(Tex. App.--Beaumont 1993, no pet.) (where defendant argued that a "Drug Impact Court" sign
in hallway in view of jurors denied him a fair trial because sign was "tantamount to instructing
the jury that appellant is a drug dealer," no error found because defendant could not show any
evidence that his rights had been denied, and court would not presume harm). We overrule
appellant's first point of error.

 Appellant argues in his second point of error that the trial court abused its
discretion by admitting photographs that were cumulative and inflammatory. Appellant raises
complaints concerning State's Exhibits 45, 53, and 54, arguing that sufficient testimony had
already been elicited that Selvera had been shot in the face and, therefore, the probative value of
the photographs was substantially outweighed by the danger of unfair prejudice. Tex. R. Crim.
Evid. 403.

 Some factors that courts consider in determining whether the probative value of a
photograph is outweighed by its prejudicial effect include: the number of exhibits offered, their
gruesomeness, their detail, their size, whether they are in color or black and white, whether they
are close-ups, and whether the body is depicted clothed or naked. Barnes v. State, 876 S.W.2d
316, 326 (Tex. Crim. App.), cert. denied, 115 S. Ct. 174 (1994). The critical inquiry is whether
the photographs are so horrifying or appalling that a juror of normal sensitivity would encounter
difficulty in rationally deciding the issues in the case after viewing them. Fuller v. State, 829
S.W.2d 191, 206 (Tex. Crim. App. 1992), cert. denied, 113 S. Ct. 2418 (1993).

 Appellant argues that Exhibit 45 should not have been admitted both because its
gruesomeness unfairly prejudiced appellant and because it was an exact duplicate of Exhibit 3,
both of which depicted the shotgun wound to the victim's face. The State argues that the two
pictures are similar, but not cumulative. Exhibit 3 depicts the victim at the scene of the murder. 
Exhibit 45 was taken after the blood had been cleaned from the wound, from a much closer
distance than Exhibit 3, and showed the imprint and the injury wound on the victim's face. We
agree that Exhibit 45 differs from Exhibit 3 in several ways, and therefore is not cumulative. We
also conclude that Exhibit 45 was not so gruesome as to be unfairly prejudicial to appellant. 
Although Exhibit 45 is somewhat gruesome, it has not been enhanced in any way and does no
more than portray the injuries that the victim actually received. See Barnes, 876 S.W.2d at 326. 
Photographs generally are admissible if verbal testimony as to matters depicted in the photographs
is admissible. Jones v. State, 843 S.W.2d 487, 501 (Tex. Crim. App. 1992), cert. denied, 13 S.
Ct. 1858 (1993). In this case, Dr. Bayardo, the Travis County Medical Examiner, used Exhibit
45 for illustrative purposes while testifying about the victim's injuries. The trial court did not
abuse its discretion in admitting Exhibit 45.

 Exhibits 53 and 54 are photographs taken during the autopsy that depict the victim's
brain while still encased in the skull and after its removal from the skull. Appellant objected at
trial on the grounds that the exhibits were unnecessarily gruesome and depicted mutilation to the
body that occurred during the autopsy. (5)

 Appellant argues that the two photographs should have been excluded under Rule
403 because the sole purpose of the exhibits was to "whip the jury further into conviction mode." 
The two 8 X 10 color photographs of the victim's brain were taken during the autopsy. Exhibit
53 depicts a view of the brain after the top of Selvera's skull had been removed, but while the
brain is still encased in the skull. Exhibit 54 shows the brain after it has been removed from the
skull. Autopsy photographs must be viewed more critically to ensure that they depict more than
the "massive mutilation of the subject matter caused by the surgery in performing the autopsy." 
Terry v. State, 491 S.W.2d 161, 164 (Tex. Crim. App. 1973). However, photographs of an
autopsy should be excluded only where the results of the autopsy have obscured the results of the
crime. Bailey v. State, 532 S.W.2d 316, 321 (Tex. Crim. App. 1976).

 We disagree with appellant that the exhibits' probative value was substantially
outweighed by their prejudicial effect. Dr. Bayardo testified that Exhibit 53 illustrated the
direction of the gunshot and the injuries caused by the fragmenting of the skull at the entrance
wound. He stated that Exhibit 54 depicted the massive injury to the base of the brain, and allowed
the jury to compare the disrupted areas with normal brain tissue. He also testified that the jury
could see the multiple lead pellets lodged in the brain tissue. The exhibits were probative both
to show the cause of death and to clarify Bayardo's testimony concerning the type of wound the
victim sustained. See Griffin v. State, 198 S.W.2d 587, 589 (Tex. Crim. App. 1946); Sandow
v. State, 787 S.W.2d 588, 597 (Tex. App.--Austin 1990, pet. ref'd). The photographs are
undeniably gruesome; they depict, however, the extent of injury to the victim's brain and the
cause of his death. The trial court did not abuse its discretion in admitting the exhibits. We
overrule appellant's second point of error. (6) 

 In his third point of error, appellant complains that the trial court erred by
admitting appellant's confession, which was obtained as the result of an illegal arrest. Under
Article 38.23 of the Code of Criminal Procedure, evidence obtained in violation of either the
United States or Texas Constitutions or laws cannot be admitted against the defendant at trial. 
Tex. Code Crim. Proc. Ann. art. 38.23(a) (West Supp. 1995). 

 On March 24, 1992, appellant accompanied officers to the police station after they
traced the car at the crime scene to him. After giving a witness statement, he was permitted to
leave. (7) At the request of the officers, appellant voluntarily returned the next day, March 25, for
more questioning and to take a polygraph test. At 12:40 p.m., Sergeant Hunt learned that
appellant had failed the polygraph; however, appellant was not placed under arrest at that time.

 Appellant then stated to police that Roy Bradley could clear up the entire
investigation if appellant could speak with him. Appellant and Bradley met privately in an
interview room monitored by a police video camera. The two men embraced, then huddled
together whispering. At the end of the conversation, Bradley told the officers that he shot
Selvera. (8) Bradley described to the officers how the shooting occurred and stated that the weapons
were hidden next to a vacant house in Austin. Bradley's confession corroborated some details of
the murder known to the investigators; other statements were contradictory. When confronted
with these inconsistencies, Bradley admitted he was not telling the truth and retracted his
statement.

 The officers arrested appellant at the police station at approximately 10:00 p.m. on
March 25. A warrant was not obtained until 2:00 p.m. on March 26, 1992; appellant gave a
second statement to police at 12:15 p.m., before an arrest warrant was obtained. Appellant argues
that the second statement was inadmissible because it was the fruit of an illegal arrest.

 The State initially responds that appellant's statement was not a confession because
he implicated co-defendant Lee and Bradley as the individuals who shot Selvera. Appellant's
statement, however, admits that he was at the crime scene and that he and the others drove to
Austin to "jack," i.e., rob, somebody. Although appellant did not confess to the murder, his
statement is somewhat incriminating. We will therefore address the merits of this issue.

 Generally, officers must obtain a warrant before arresting a suspect. Dejarnette
v. State, 732 S.W.2d 346, 349 (Tex. Crim. App. 1987). Once a defendant establishes that his
arrest occurred without a warrant, the burden shifts to the State to demonstrate that the arrest was
made pursuant to a statutory exception to the warrant requirement. Beasley v. State, 728 S.W.2d
353, 355 (Tex. Crim. App. 1987).

 The State argues that appellant's warrantless arrest was lawful under Article 14.04
of the Code of Criminal Procedure, which provides:



Where it is shown by satisfactory proof to a peace officer, upon the representation
of a credible person, that a felony has been committed, and that the offender is
about to escape, so that there is no time to procure a warrant, such peace officer
may, without warrant, pursue and arrest the accused.



Tex. Code Crim. Proc. Ann. art. 14.04 (West 1977). Article 14.04 does not require a showing
that the offender actually was about to escape nor does it require a showing that there was in fact
no time to obtain a warrant; the statute merely requires that an officer have satisfactory proof that
the offender is about to escape and that there is no time to procure a warrant. Crane v. State, 786
S.W.2d 338, 347 (Tex. Crim. App. 1990); see Smith v. State, 739 S.W.2d 848, 852 (Tex. Crim.
App. 1987) (must show existence of circumstances that made procuring warrant impracticable).

 Appellant does not challenge the fact that the police had probable cause to arrest
him; instead, he claims that the police had no reason to believe that he was about to escape so as
to justify the warrantless arrest. The State argues that the police had satisfactory proof that
appellant would escape before officers could procure a warrant. See Crane, 786 S.W.2d at 347. 
The officers were aware of the following facts at the time they arrested appellant: appellant's car
was used in the commission of the murder; the murder had been committed as part of an initiation
into a gang, the "Crips," with which appellant had connections; appellant had been informed that
he had failed the polygraph test; appellant and Lee each gave initial statements that "Topcat" had
borrowed the car on the night of the murder, indicating that appellant had conspired with Lee to
concoct a story that would take the heat of the investigation off of him; appellant convinced
Bradley to confess when he realized that the police suspected him; and appellant was unemployed,
lived in "what appeared to be a crack house," and had no ties to the community. Additionally,
the weapons had not yet been recovered, and the police were fearful of the safety of the
community if appellant were allowed to leave the police station while officers obtained a warrant. 
The police were also concerned that evidence might be destroyed if appellant were released. On
the other hand, appellant voluntarily accompanied the officers to the station on March 25, and
remained there throughout the day without attempting to leave.

 As to whether there was satisfactory proof that there was not time to procure a
warrant, the officers testified at trial to the circumstances that led to their decision to execute a
warrantless arrest. Arrest warrants had to be obtained from Travis County, where the offense
occurred. Vasquez, one of the arresting officers, explained that the procedure would have taken
five to six hours because the officers in Austin that Hunt and Vasquez were working with had left
for the day and no judge was available at the late hour in which they decided to arrest appellant. (9) 
Vasquez testified that they could not have obtained a warrant before 5:00 or 6:00 a.m. on March
26.

 The Court of Criminal Appeals has noted, "[i]n determining whether an officer
could have reasonably believed that a suspect would take flight, it is important to keep in mind
the `temporal proximity' of the actions of a suspect both to the commission of the crime, and to
the suspect's discovery of the police investigation of him." Allridge v. State, 850 S.W.2d 471,
491 (Tex. Crim. App. 1991), cert. denied, 114 S. Ct. 101 (1993) (emphasis added); Dejarnette,
732 S.W.2d at 352. Appellant apparently cooperated initially with the police in the hope of
convincing them that "Topcat" committed the murder, and appellant was aware that the police
were considering him a suspect when he convinced Bradley to take responsibility for the crime. 
Based on the facts about the crime and appellant known to the officers, appellant's awareness that
the police were focusing in on him as a murder suspect, and the impracticability of obtaining a
warrant at that time of the night, the officers did not violate Article 14.04 when they arrested
appellant without a warrant. See Allridge, 850 S.W.2d at 491; Dotsey v. State, 630 S.W.2d 343,
348 (Tex. App.--Austin 1982, no pet.) (warrantless arrest upheld where defendant was stopped late
at night because "[d]elay to obtain an arrest warrant was neither feasible nor practical under the
circumstances"). We conclude that appellant's warrantless arrest was justified, given that the
police should not be forced to release a person who is aware that he is a prime suspect "with the
delusive hope that the person would wait about for their return." Hollomon v. State, 633 S.W.2d
939, 943 (Tex. App.--Austin 1982, pet. ref'd). (10) Having concluded that appellant's arrest was
legal, we need not address whether the confession was the fruit of an illegal arrest. We overrule
appellant's third point of error.

 Appellant argues in his fourth point of error that the trial court erred in overruling
appellant's objection to the prosecutor's misstatement of the law in closing argument and in
refusing to give an instruction concerning that statement. Police are authorized to arrest persons
without a warrant if they are "found in suspicious places and under circumstances which
reasonably show that such persons have been guilty of some felony violation." Tex. Code Crim.
Proc. Ann. art. 14.03(a)(1) (West Supp. 1995). If the issue is raised that the evidence was
obtained as the result of an illegal arrest, the jury must be instructed to disregard the evidence if
it believes or has a reasonable doubt as to whether the evidence was obtained in violation of the
U.S. or Texas Constitutions or laws. Tex. Code Crim. Proc. Ann. art. 38.23(a) (West Supp.
1995).

 Because the legality of the arrest was at issue here, the jury received an instruction
that included Article 38.23 and the exceptions to the warrant requirement. During closing
argument, the prosecutor explained the different exceptions to the warrant requirement and their
applicability to appellant's case. The prosecutor indicated that appellant had been found in a
suspicious place because he was found next to the car which witnesses reported had been used as
the getaway car. Appellant objected, arguing that the law requires that the person be found in a
suspicious place at the time of the arrest, and that appellant had been arrested at the police station. 
The trial court reminded the jury that argument was not evidence, but refused to give the jury an
instruction to disregard the misstatement.

 Examining the record, we find that the prosecutor did misstate the law as applied
to the facts of appellant's case. At the time of appellant's arrest, he had been at the Houston
Police Station for most of the day and, therefore, was not found in a suspicious place that would
authorize a warrantless arrest. See Johnson v. State, 722 S.W.2d 417, 421 (Tex. Crim. App.
1986) (Article 14.03 should only be applied in limited situations in order to protect individuals),
overruled in part on other grounds, McKenna v. State, 780 S.W.2d 797, 800 (Tex. Crim. App.
1989).

 Generally, an instruction to the jury to disregard the improper remark will cure any
error. Anderson v. State, 633 S.W.2d 851, 855 (Tex. Crim. App. 1982). Failure to sustain a
defendant's objection may constitute reversible error. Berryhill v. State, 501 S.W.2d 86, 87 (Tex.
Crim. App. 1973); Stearn v. State, 487 S.W.2d 734, 735-36 (Tex. Crim. App. 1972). Although
the trial court overruled appellant's objection, the situation presented here is different from that
in Berryhill or Stearn. The trial court gave an instruction to disregard despite refusing to sustain
the objection:



Court: Members of the jury, argument is not evidence. You have the law as is in
the charge and as has been submitted and read to you.



 Although the trial court should have sustained appellant's objection, we conclude
that any error in this situation was harmless for two reasons: (1) the trial court's admonishment
to the jury was sufficient to obviate any error from the prosecutor's improper jury argument; and
(2) our conclusion, as a matter of law, that the warrantless arrest was proper under the exigent
circumstances exception. See Tex. Code Crim. Proc. Ann. art. 14.04 (West 1977); Tex. R. App.
P. 81(b)(2) (requiring reversal if there is error unless appellate court determines beyond a
reasonable doubt that the error made no contribution to conviction). We overrule appellant's
fourth point of error.

 We affirm appellant's capital murder conviction.



 

 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Jones and Kidd

Affirmed

Filed: March 15, 1995 

Do Not Publish 
1.   This offense occurred before September 1, 1994, and is governed by the law in effect
at the time the offense was committed. Penal Code, 73d Leg., R.S., ch. 900, § 1.18, 1993
Tex. Gen. Laws 3586, 3705. Because the code amendments effective September 1, 1994
have no substantive effect on this provision, the current code is cited for the sake of
convenience.
2.   In this statement, appellant stated that he had loaned his car to a man named
"Topcat" on March 19, 1992, and that the car was not returned to him until 2:00 or 3:00
a.m. on March 20, 1992.
3.   Lee v. State, no. 3-93-372-CR (March 15, 1995).
4.   Although appellant's attorney did not object, appellant filed a pretrial motion to
adopt co-defendant's motions and objections, which was granted. Thus, appellant has
preserved this point of error for review.
5.   Appellant initially argues that these exhibits may not have been relevant under Rule
of Criminal Evidence 401 because, unlike the other autopsy photographs introduced, they
lack any labels to identify them or to relate them to Selvera's autopsy. At trial, however,
appellant objected to the photographs solely on the grounds that they were gruesome and
shed no additional light on the case. A specific objection is required to inform the trial
court of the basis of the objection and afford it the opportunity to rule on it. Zillender v.
State, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977). Because appellant's trial objection does
not comport with the Rule 401 relevancy issue he is raising on appeal, appellant has preserved
nothing for review. Barnes, 876 S.W.2d at 325.
6.   In examining exhibits, appellant urges us to adopt an average-person standard of
review similar to that used in obscenity cases. See Tex. Penal Code Ann. § 43.21(a)(1)(A)
(West 1994). The Court of Criminal Appeals, however, has applied the Rule 403 analysis as
the standard for reviewing the admission of photographs. See, e.g., Barnes, 876 S.W.2d at
325-26 (court limited to Rule 403 review of photographs); Long v. State, 823 S.W.2d 259,
271 (Tex. Crim. App. 1991), cert. denied, 112 S. Ct. 3042 (1992). This Court lacks the
authority to change a standard pronounced by the Court of Criminal Appeals.
7.   Appellant's witness statement was admitted into evidence at the pretrial hearing,
but it was not admitted at trial.
8.   Bradley was a juvenile at the time of the offense. The officers at trial testified that 
different laws cover confessions and the conviction of juveniles. 
9.   Vasquez explained what the process of procuring a warrant required and why it
took such a long amount of time:


Five- or six- hour period refers to contacting the officer, getting him in,
which is going to take 30 minutes to an hour, faxing that information to him,
having him review it, having him locate a judge, he'll have to call, find a
judge that time of night. . . . Then he will have to go out to that judge,
present the affidavit, if it is accepted it is signed. The affidavit is taken to a
municipal court so a warrant can be issued. The warrant would then be
taken to the judge to be signed. You are talking about 30 minutes to an hour
for each of these items that's happening.
10.   Appellant argues that the police merely could have kept him at the station while
they obtained a proper warrant. Appellant's contention, however, contradicts the very
nature of an arrest. The police could not prevent him from leaving the station if he chose
to in the absence of an arrest. If they had done so, that would be tantamount to an arrest
and the same analysis would apply. See Chambers v. State, 866 S.W.2d 9, 19 (Tex. Crim.
App. 1993), cert. denied, 114 S. Ct. 1871 (1994) (arrest complete when a person's liberty of
movement is restricted or restrained).